UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

-----------------------------------------------------------------------x
MICHAEL KING F. VENERACION,               )

                             *Plaintiff*,   )    Index No.

                                     )

      - against -                 )    **COMPLAINT**

                                     )

7-ELEVEN FOOD STORE, 7-ELEVEN STORE   )    **Jury Trial Demanded**

#32127B, MAHESH PATEL, and RAJENDRA   )

PATEL,                               )

                           *Defendants*.   )

-----------------------------------------------------------------------x

Plaintiff MICHAEL KING F. VENERACION ("Plaintiff" or Veneracion"), by and through his attorneys, the Law Office of Felix Vinluan, alleges against Defendants 7-Eleven Food Store, 7-Eleven Store #32127B (collectively, "the Store"), Mahesh Patel ("M. Patel"), and Rajendra Patel ("R. Patel") (all defendants collectively the "Defendants"), upon information and belief, as follows:

## PRELIMINARY STATEMENT

1. At all times relevant, the Defendant Store operates as a 7-Eleven franchise located at 87-16 Astoria Boulevard, East Elmhurst, NY 11369, offering, among other products, food and drinks for sale to the public for takeout or delivery.

2. As part of their regular business practice, the Defendants have intentionally, willfully and repeatedly engaged in a pattern, practice, and/or policy of violating the Fair Labor Standards Act, 29 U.S.C. §§ 201 *et seq*. ("FLSA"), the New York Labor Law Article 19, §§ 650 *et seq*., and the supporting New York State Department of Labor Regulations, 12 N.Y.C.R.R. Part 142 ("NYLL") with respect to Plaintiff by failing to pay Plaintiff minimum wage for all his hours of work; overtime wages for hours he worked in excess of forty (40) hours per week; and

1

failing to pay Plaintiff one additional hour of pay at the basic minimum wage rate for spread-of-hours pay.

3.     At all times relevant to this action, the Store, upon information and belief, has held itself out to the public and to New York State and City agencies under a variety of different names, including: "7-Eleven #32127B", "7-Eleven 32127B", "7-Eleven Store", and "7-Eleven Store #32127C".

4.     As of July 11, 2026, none of the aforementioned names the Store has held itself out as doing business as, using various search parameters on the online Corporation and Business Entity Database, returned results for an entity registered with the New York State Department of State Division of Corporations.

5.     At all times relevant to this action, the Store, despite its various names, is, upon information and belief, operated as a 7-Eleven franchise by M. Patel and R. Patel, who are the owners, shareholders, and/or principals, and are responsible for the day-to-day operations of the Store.

## NATURE OF THE ACTION

6.     The Defendants own and/or operate the Store which is located in East Elmhurst, New York, within this District, as a 7-Eleven franchise.

7.     From on or around February 1, 2025, until on or around the second week of November 2025, Defendants jointly employed Veneracion as a Clerk at the Store.

8.     In his capacity as Clerk for Defendants, Veneracion's duties and responsibilities included cleaning and stocking the Store, refilling drinks, making coffee to be sold to customers, processing customer transactions, and manning the cash register, and otherwise performing tasks to maintain the cleanliness and operation of the Store.

9. For the duration of Veneracion's employment with Defendants, he was a non-exempt employee.

10. Defendants maintained a pattern and practice of failing to pay Veneracion the applicable minimum wage rate for all hours he worked and the overtime rate of one-and-one half (1 ½) times his regular hourly/applicable minimum wage rate for all hours he worked in excess of 40 hours per week.

11. Defendants effectively paid Veneracion a flat daily wage for each day he worked, in cash, regardless of how many hours he worked. This payroll scheme is an obvious and willful avoidance of Defendants' obligation to pay minimum and overtime wages, as required under state and federal law.

12. Defendants additionally failed to pay Veneracion spread-of-hours pay for each workday his shift exceeded 10 hours per day.

13. In addition to the aforementioned violations, Defendants also failed to furnish to Veneracion a wage notice at the time of hire or at any point during his employment thereafter, and Defendants failed to furnish Veneracion with pay statements completely and accurately reflecting, *inter alia*, the hours he worked and pay he received.

14. Defendants further failed to maintain an accurate record keeping of hours worked and paid to Veneracion.

15. Veneracion seeks relief for Defendants' unlawful actions, including compensation for unpaid minimum wages, overtime wages, spread-of-hours pay, liquidated damages, statutory civil damages, pre- and post-judgment interest, and attorney's fees and costs pursuant to the FLSA and NYLL.

## JURISDICTION AND VENUE

16.     This Court has subject matter jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1337 and supplemental jurisdiction over Plaintiffs' state law claims pursuant to 28 U.S.C. § 1367 in that the state and federal claims arise from a common nucleus of operative fact such that they are so related that they form part of the same case or controversy under Article III of the United States Constitution.

17.     In addition, the Court has jurisdiction over Plaintiffs' claims under the FLSA pursuant to 29 U.S.C. § 216(b).

18.     Venue is proper in the Eastern District of New York pursuant to 28 U.S.C. § 1391 since a substantial part of the events or omissions giving rise to the claims occurred in this District.

19.     Defendants do business in the State of New York, within the Eastern District of New York, and maintain a place of business at 87-16 Astoria Boulevard, East Elmhurst, New York 11369.

20.     The annual gross income of Defendants' business is more than $500,000.00. Upon information and belief, the average daily gross sales of Defendants' 7-Eleven Store is at least around $12,000.00.

## PARTIES

**Plaintiff Michael King F. Veneracion**

21.     At all times relevant to this action, Veneracion was and is a resident of Queens County, New York.

22.     At all times relevant to this action, Veneracion was an "employee" within the meaning of Section 3(e) of the FLSA, 29 U.S.C. § 203(e), and New York Labor Law § 190(2).

23. At all times relevant to this action, Veneracion was an "employee" within the meaning of 12 N.Y.C.R.R. 146-3.2.

24. At all times relevant, Veneracion was a "fast-food employee" within the meaning of 12 N.Y.C.R.R. 146-3.13(a).

25. At all times during his employment with Defendants, Veneracion was an employee engaged in commerce and/or the production of goods for commerce within the meaning of 29 U.S.C. §§ 206(a) and 207(a).

26. Specifically, while employed by Defendants, Veneracion stocked and processed the sale of goods to the Store's customers, such as prepackaged food and beverages, which were produced outside the State of New York and transported via interstate commerce to the Store in New York. Additionally, Veneracion used ingredients produced outside the State of New York and transported via interstate commerce to the Store in New York to prepare food and drink items sold to Defendants' customers. Veneracion further used cleaning products and materials manufactured outside the State of New York and transported via interstate commerce to Defendants' 7-Eleven Store in New York to clean the Store.

27. At all times during his employment with Defendants, Veneracion was subordinate to and under the direct supervision of M. Patel.

28. At all times during his employment with Defendants, Veneracion was subordinate to and under the direct supervision of R. Patel.

**Defendants 7-Eleven Store and 7-Eleven Store #32127B**

29. At all times relevant to this action, the Store was and is a for-profit entity conducting business in the State of New York.

5

30.     At all times relevant to this action, the Store was and is a business or enterprise engaged in interstate commerce.

31.     At all times relevant to this action, the Store had employees engaged in commerce or in the production of goods for commerce and handling, selling, or otherwise working on goods or materials that have been moved in and/or produced for commerce by any person.

32.     At all times relevant to this action, the Store – along with M. Patel and R. Patel – operated the 7-Eleven franchise located at 87-16 Astoria Blvd., East Elmhurst, NY 11369 for each of the Store's, M. Patel's, and R. Patel's mutual benefit and profit.

33.     At all times relevant to this action, M. Patel was, upon information and belief, an owner, shareholder, and/or principal of the Store.

34.     At all times relevant to this action, M. Patel was manager of the Store and its employees, including Veneracion.

35.     At all times relevant to this action, R. Patel was, upon information and belief, an owner, shareholder, and/or principal of the Store.

36.     At all times relevant to this action, R. Patel was manager of the Store and its employees, including Veneracion.

37.     At all times relevant to this action, the Store operated and controlled an enterprise engaged in commerce with an annual gross volume of business done exceeding $500,000.

38.     From on or around February 1, 2025 until in or around the second week of November 2025, the Store was an employer of Veneracion within the meaning of all applicable statutes.

**Defendant Mahesh Patel**

39.     M. Patel, upon information and belief, was and is a resident of the State of New Jersey.

40.     At all times relevant to this action, M. Patel served, upon information and belief, as a principal, shareholder, officer, owner, and/or manager of the Store.

41.     At all times relevant to this action, M. Patel possesses or possessed an ownership interest in the Store and possessed and exercised operational control over and policy making authority within the Store.

42.     At all times relevant to this action, M. Patel possessed and exercised the power and authority vested in him by the Store to hire and fire employees, establish the rate and method of pay of employees, determine work schedules, control labor relations and personnel policies, maintain employment records, assign employees' duties and responsibilities, evaluate employees' performance, and otherwise determine terms and conditions of the employment of the Store's employees, including Veneracion.

43.     Employees of the Store could complain to M. Patel directly regarding any of the terms of their employment, and M. Patel would have the authority to effect any changes to the quality and terms of their employment.

44.     At all times relevant to this action and upon information and belief, M. Patel, while in New Jersey, communicated with employees of the Store in Queens County, New York either through phone or text messages and gave directions or orders in running or managing the day-to-day operations of the Store.

45.     M. Patel participated in the decision to hire Veneracion.

46.     M. Patel participated in deciding Veneracion's job duties and responsibilities.

47.     M. Patel participated in deciding the manner in which Veneracion was paid.

48.     M. Patel participated in deciding the hourly rate Plaintiff was paid.

49.     M. Patel participated in deciding how the Plaintiff's compensation was paid.

50.     The acts of the Store in this Complaint were authorized, directed or accomplished by M. Patel individually, by himself or his agents, officers, employees or representatives, while actively engaged in the management of the Store.

51.     During Veneracion's employment with Defendants, he knew M. Patel as "Mahesh" or "Mike".

52.     At all times during Veneracion's employment with the Store, M. Patel was an employer of Veneracion within the meaning of all applicable statutes.

53.     M. Patel is personally and jointly and severally liable to Veneracion for the Store's violations of the FLSA and NYLL, as alleged in this action.

**Defendant Rajendra Patel**

54.     R. Patel, upon information and belief, was and is a resident of the State of New Jersey.

55.     At all times relevant to this action, R. Patel served, upon information and belief, as a principal, shareholder, officer, owner, and/or manager of the Store.

56.     At all times relevant to this action, R. Patel possesses or possessed an ownership interest in the Store and possessed and exercised operational control over and policy making authority within the Store.

57.     At all times relevant to this action, R. Patel possessed and exercised the power and authority vested in him by the Store to hire and fire employees, establish the rate and method of pay of employees, determine work schedules, control labor relations and personnel policies, maintain employment records, assign employees' duties and responsibilities, evaluate

8

employees' performance, and otherwise determine terms and conditions of the employment of the Store's employees, including Veneracion.

58.    At all times relevant to this action and upon information and belief, R. Patel, while in New Jersey, communicated with employees of the Store in Queens County, New York either through phone or text messages and gave directions or orders in running or managing the day-to-day operations of the Store.

59.    R. Patel participated in the decision to hire Veneracion.

60.    R. Patel participated in deciding Veneracion's job duties and responsibilities.

61.    R. Patel participated in deciding the manner in which Veneracion was paid.

62.    R. Patel participated in deciding the hourly rate Plaintiff was paid.

63.    R. Patel participated in deciding how the Plaintiff's compensation was paid.

64.    Employees of the Store could complain to R. Patel directly regarding any of the terms of their employment, and R. Patel would have the authority to effect any changes to the quality and terms of their employment.

65.    The acts of the Store in this Complaint were authorized, directed or accomplished by R. Patel individually, by himself or his agents, officers, employees or representatives, while actively engaged in the management of the Store.

66.    During Veneracion's employment with Defendants, he knew R. Patel as "Raj".

67.    At all times during Veneracion's employment with the Store, R. Patel was an employer of Veneracion within the meaning of all applicable statutes.

68.    R. Patel is personally and jointly and severally liable to Veneracion for the Store's violations of the FLSA and NYLL, as alleged in this action.

**Common Allegations for All Defendants**

69.     Defendants are associated and joint employers, act in the interest of each other with respect to employees, are responsible for paying employees, and share control over the employees, including Veneracion.

70.     Each individual Defendant possessed substantial control over Veneracion's working conditions, and over the policies and practices with respect to his employment and compensation.

71.     Defendants dictated, controlled, and ratified the wage and hour and all related employee compensation policies during Plaintiff's employment.

72.     Defendants jointly employed Veneracion and are Veneracion's employers within the meaning of the FLSA and the NYLL.

73.     Defendants are employers engaged in commerce and/or the production of goods for commerce within the meaning of 29 U.S.C. §§ 206(a) and 207(a).

74.     Upon information and belief, Defendants maintain control, oversight, and direction over the operations and employment practices in their 7-Eleven franchise store in East Elmhurst, New York.

75.     At all times relevant, Defendants' 7-Eleven franchise store in East Elmhurst, New York is a "fast-food establishment" within the meaning of 12 N.Y.C.R.R. 146-3.13(b).

76.     The primary purpose of Defendants' 7-Eleven franchise store in East Elmhurst, New York is serving food and drink items.

77.     Defendants' customers order and pay before eating their food and drinks.

78.     Defendants' customers purchase their food and beverage from Defendants' 7-Eleven Store for on-premise and/or take-out consumption.

79.     Defendants have interrelated operations.

10

80.     Defendants have a centralized control of labor relations

81.     At all times hereinafter mentioned, the activities of the Defendants constituted an "enterprise" within the meaning of Section 3(r) & (s) of the FLSA, 29 U.S.C. § 203(r) & (s).

82.     At all times hereinafter mentioned, Defendants employed employees, including the Plaintiff herein, who regularly engaged in commerce or in the production of goods for commerce or in handling, selling, or otherwise working on goods and materials which have moved in or produced for commerce within the meaning of Section 3(b), (g), (i) and (j) of the FLSA.

83.     The overtime wage provisions set forth in §§ 201 *et seq*. of the FLSA apply to the Defendants.

84.     At all relevant times, Defendants maintained control, oversight, and direction over their employees, including timekeeping, payroll and other employment practices that applied to them, including Veneracion.

85.     At all relevant times, Defendants applied the same employment policies, practices and procedures to all their employees, including policies, practices, and procedures with respect to the failure to pay minimum wage for all hours worked, the failure to pay overtime wages for all hours worked in excess of 40 hours per workweek, and the failure to pay spread-of-hours pay.

86.     Defendants M. Patel and R. Patel exercised complete domination and control of Defendant Store in respect to the conduct alleged in this Complaint, including violations of the FLSA and NYLL, by their failure to pay their employees, including Veneracion, for all of their hours of work, failure to pay correct overtime pay, and failure to pay spread-of-hours pay as required by federal and/or state laws.

## **FACTUAL ALLEGATIONS**

87.    On or around February 1, 2025, Veneracion commenced employment with Defendants.

88.    For the duration of his employment with Defendants, Veneracion was a Clerk, reporting to work at the Store located at 87-16 Astoria Blvd., East Elmhurst, New York 11369.

89.    For the duration of Veneracion's employment with Defendants, M. Patel and R. Patel owned the Store.

90.    The ultimate decision to hire Veneracion to work at the Store was made by R. Patel.

91.    For the duration of Veneracion's employment with Defendants, M. Patel and R. Patel possessed and exercised managerial authority over Veneracion's employment.

92.    In his capacity as a Clerk for Defendants, Veneracion's duties and responsibilities included cleaning and stocking the Store, refilling drinks, making the coffee to be sold to customers, processing customer transactions and manning the cash register, and otherwise performing tasks to maintain the cleanliness and operation of the Store.

93.    For the duration of his employment with Defendants, Veneracion satisfactorily performed his duties and responsibilities.

94.    For the duration of his employment with Defendants, Veneracion was a non-exempt employee.

95.    For the duration of Veneracion's employment with Defendants, the Store was open 24-hours per day, seven days per week.

96.    For the duration of Veneracion's employment with defendants, Clerks, including Veneracion, were scheduled to work in 12-hour shifts, from 9:00 a.m. to 9:00 p.m. (the day shift), and from 9:00 p.m. to 9:00 a.m. (the night shift).

97.     Per R. Patel, Clerks were not permitted to leave at the end of their shifts unless relieved by another Clerk.

98.     From his hire on or around February 1, 2025 until on or around October 18, 2025, other than the one month during which Veneracion was recovering from a stroke, Veneracion worked six (6) days per week, with a varying day off, usually Mondays or Thursdays.

99.     For approximately the first three months of his employment – from around February 2025 to May 2025 – Veneracion worked the day shift, beginning at 9:00 a.m. and ending around 9:30 p.m., due to routinely late relief.

100.    On or around July 16, 2025, Veneracion suffered a stroke while working at the Store.

101.    After a month of recuperation, on or around August 16, 2025, Veneracion returned to work at the Store.

102.    From in or around May 2025 until October 18, 2025 – other than his one month out of work – Veneracion worked the night shift, beginning his shift at 9:00 p.m. and ending his shift at approximately 9:30 a.m. – around 30 minutes after it was scheduled to end.

103.    As a result, during this period (other than the one month when he was recovering from the stroke), Veneracion worked approximately 75 hours per week.

104.    R. Patel removed Veneracion from his regular schedule after October 18, 2025, and assigned him to a three-day workweek effective on or around October 31, 2025.

105.    Veneracion worked a three-day workweek until in or around the second week of November 2025.

106.    In or around the second week of November 2025, R. Patel terminated Veneracion's employment with the Store.

107. For the duration of Veneracion's employment with Defendants, Defendants paid Veneracion a daily salary, in cash, of $100 for each day he worked.

108. Veneracion received no pay for the month he did not work due to his stroke.

109. Defendants paid Veneracion only twice per month – on the 5th and 21st – based upon the number of days he worked in that pay period.

110. For the period Veneracion worked the day shift, R. Patel handed Veneracion an envelope with his cash salary and a handwritten slip with the amount of cash and number of days worked.

111. For the period Veneracion worked the night shift, his wages – along with the handwritten slip – were left for him in an envelope in the cash register.

112. When R. Patel and M. Patel were on vacation during a payday, Veneracion would not be paid until they returned.

113. On several occasions during Veneracion's employment, the Store Manager told Veneracion that he would receive a raise.

114. However, despite multiple requests, Defendants never gave Veneracion a raise.

115. On one occasion when Veneracion asked R. Patel for a raise, R. Patel refused, telling Veneracion, "If you leave here, the store will still be here."

116. For the duration of Veneracion's employment with Defendants, Defendants never provided Veneracion with meal breaks, and Veneracion was forced to eat while working his shifts.

117. Defendants never furnished to Veneracion, at the time of his hire or at any point thereafter, a wage notice setting forth, among other information, his regular rate of pay, overtime rate of pay, exempt status, and entity and fictitious names of the Store.

118.    For the duration of Veneracion's employment with Defendants, Defendants never furnished to Veneracion, along with each payment of wages, wage statements completely and accurately setting forth, among other information, the number of hours he worked, his rate of pay, overtime rate, deductions, and entity and fictitious names of the Store.

119.    For the duration of his employment with Defendants, Defendants paid Veneracion a flat, daily salary in cash, regardless of how many hours he worked per week.

120.    This compensation scheme is a blatant, willful violation of the FLSA and NYLL.

121.    For the duration of his employment with Defendants, Defendants did not pay Veneracion at least the applicable minimum wage rate for all hours he worked in a week.

122.    For the duration of his employment with Defendants, Defendants did not pay Veneracion the one-and-on-half (1 ½) overtime premium rate for each hour he worked beyond forty (40) hours in a week.

123.    For the duration of his employment with Defendants, Defendants did not pay Veneracion any additional pay when his shift or shifts exceeded ten (10) hours per day.

124.    For the duration of his employment with Defendants, Defendants failed to keep accurate records of wages earned or hour worked by Veneracion.

125.    At the time of his hire or at any point thereafter, for the duration of Veneracion's employment with Defendants, Defendants failed to furnish Veneracion with a wage notice setting forth his rate of pay, exempt status, overtime rate, method of compensation, regular payday, names of his employers (including fictitious names), addresses and phone numbers for his employer's main offices or principal locations, or any allowances taken.

126.    At the time of his hire or at any point thereafter, for the duration of Veneracion's employment with Defendants, Defendants failed to furnish Veneracion with an accurate and

complete statement with every payment of wages listing the following: the dates of work covered by that payment of wages; name of employee; name of employer; address and phone number of employee; rate or rates of pay and basis thereof, whether paid by the hour, shift, day, week, salary piece, commission, or other; gross wages; deductions; allowances, if any, claimed as part of the minimum wage; net wages; the regular hourly rate or rates of pay; the overtime rate or rates of pay; the number of regular hours worked, and the number of overtime hours worked.

127. Defendants' failure to provide Veneracion with a compliant wage notice and wage statements has caused him concrete harm. Specifically, had Defendants provided Veneracion with a wage notice that indicated he was "non-exempt" and a wage notice and wage statements reflecting his entitlement to overtime, along with his overtime rate of pay, Plaintiff would have immediately known Defendants were not paying him properly, which would have caused him to complain sooner and more specifically about Defendants' failure to compensate him properly. If Defendants failed to remediate those complaints, Plaintiff would have the option to avail himself of remedies such as looking for another job, complaining to the Department of Labor, or contacting counsel sooner than he did – options denied to him because of Defendants' failure to provide a compliant wage notice and wage statements.

128. Veneracion has suffered further concrete harm as a result of Defendants' failure to provide him with a compliant wage notice and wage statements in that he has been forced to incur unnecessary attorney's fees and costs. Specifically, Defendants' failure to provide identifying information for Plaintiff's employer (including employer names, fictitious names, and office addresses and phone numbers) – information required to be provided in a compliant wage notice and wage statements – necessitated counsel performing extensive work researching,

investigating, and pleading the identity of Plaintiff's employer entities and the correct legal name of the individual Defendants.

129. Defendants' violations of the FLSA and NYLL as relating to Veneracion's employment with Defendants have been willful.

**FIRST CAUSE OF ACTION**
**Fair Labor Standards Act – Unpaid Minimum Wages**

130. Plaintiff repeats and realleges all the foregoing paragraphs as if fully set forth herein.

131. Defendants are employers within the meaning of 29 U.S.C. §§ 203(e) and 206(a) and employed Plaintiff.

132. Defendants were required to pay Plaintiff at least the applicable minimum wage rate for all hours worked.

133. Defendants failed to pay Plaintiff the minimum wages to which he was entitled under the FLSA.

134. Defendants were aware or should have been aware that the practices described in this Complaint were unlawful and have not made a good faith effort to comply with the FLSA with respect to the compensation of the Plaintiff.

135. Defendants' violations of the FLSA described above have been willful.

136. As a result of Defendants' willful violations of the FLSA, Plaintiff is entitled to recover from Defendants his unpaid minimum wages, liquidated damages, pre-judgment interest, post-judgment interest, attorney's fees, and costs and disbursements of this action pursuant to 29 U.S.C. §216(b).

**SECOND CAUSE OF ACTION**
**Fair Labor Standards Act – Unpaid Overtime Wages**

137.    Plaintiff repeats and realleges all the foregoing paragraphs as if fully set forth herein.

138.    Defendants are employers within the meaning of 29 U.S.C. §§ 203(e) and 206(a) and employed Plaintiff.

139.    Defendants were required to pay Plaintiff one and one-half (1 ½) times the greater of his regular rate of pay and the applicable minimum wage rate for all hours worked in excess of forty (40) hours in a workweek, pursuant to 29 U.S.C. § 207.

140.    Defendants failed to pay Plaintiff the overtime wages to which he was entitled under the FLSA.

141.    Defendants willfully violated the FLSA by knowingly and intentionally failing to pay Plaintiff's overtime wages.

142.    Defendants' violations of the FLSA described above have been willful.

143.    As a result of Defendants' willful violations of the FLSA, Plaintiff is entitled to recover from Defendants his unpaid overtime wages, liquidated damages, pre-judgment interest, post-judgment interest, attorney's fees, and costs and disbursements of this action pursuant to 29 U.S.C. § 216(b).

<u>**THIRD CAUSE OF ACTION**</u>
**New York Labor Law – Unpaid Minimum Wages**

144.    Plaintiff repeats and realleges all foregoing paragraphs as if fully set forth herein.

145.    Defendants failed to pay Plaintiff the minimum wages to which he was entitled under the NYLL.

146.    Defendants have willfully violated the NYLL by knowingly and intentionally failing to pay Plaintiff's minimum hourly wages.

18

147.    As a result of Defendants' willful violations of the NYLL, Plaintiff is entitled to recover from Defendants his unpaid minimum wages, liquidated damages, pre-judgment interest, post-judgment interest, attorney's fees, and costs and disbursements of this action pursuant to NYLL §§ 663(1), *et seq.*

## FOURTH CAUSE OF ACTION
### New York Labor Law – Unpaid Overtime Wages

148.    Plaintiff repeats and realleges all foregoing paragraphs as if fully set forth herein.

149.    Under the NYLL and supporting New York State Department of Labor Regulations, Defendants were required to pay Plaintiff one and one-half (1 ½) times the greater of his regular rate of pay and the applicable minimum wage rate for all hours he worked in excess of forty (40) hours per week.

150.    Defendants failed to pay Plaintiff the overtime wages to which he was entitled under the NYLL.

151.    Defendants willfully violated the NYLL by knowingly and intentionally failing to pay Plaintiff's overtime wages.

152.    As a result of Defendants' willful violations of the NYLL, Plaintiff is entitled to recover his unpaid overtime wages, liquidated damages, pre-judgment interest, post-judgment interest, attorney's fees, and costs and disbursements of this action pursuant to NYLL §§ 663)(1), *et seq.*

## FIFTH CAUSE OF ACTION
### New York Labor Law – Unpaid Spread-of-Hours Pay

153.    Plaintiff repeats and realleges all foregoing paragraphs as if fully set forth herein.

154.    Plaintiffs worked shifts in which the spread of hours exceeded ten (10) hours, as defined by 12 N.Y.C.R.R. § 146-1.6.

155.    Throughout the duration of Plaintiff's employment with Defendants, there have been times in which he was entitled to an additional hour of pay at the "basic minimum hourly rate", as defined by 12 N.Y.C.R.R. §§ 146-1.2(1)-(2).

156.    Defendants failed to pay Plaintiff one additional hour pay at the basic minimum wage rate before allowances for each day Plaintiff's spread of hours exceeded ten (10) hours, in violation of N.Y. Lab. Law §§ 650 *et seq*., as codified by 12 N.Y.C.R.R. § 146-1.6.

157.    Defendants' failure to pay Plaintiff an additional hour of pay for each day where the spread of hours exceeded ten (10) hours was willful within the meaning of N.Y. Lab. Law § 663.

158.    As a result of Defendants' willful violations of the NYLL, Plaintiff is entitled to recover his unpaid spread-of-hours pay, liquidated damages, pre-judgment interest, post-judgment interest, attorney's fees, and costs and disbursements of this action pursuant to the NYLL.

**SIXTH CAUSE OF ACTION**
**New York Labor Law – Wage Theft Prevention Act Notice Violations**

159.    Plaintiff repeats and realleges all foregoing paragraphs as if fully set forth herein.

160.    NYLL § 195(1) obligates every employer to: "provide his or her employees, in writing in English and in the language identified by each employee as the primary language of such employee, at the time of hiring, a notice containing the following information: the rate or rates of pay and basis thereof, whether paid by the hour, shift, day, week, salary, piece, commission, or other; allowances, if any, claimed as part of the minimum wage, including tip, meal, or lodging allowances; the regular pay day designated by the employer in accordance with section one hundred ninety-one of this article; the name of the employer; any 'doing business as' names used by the employer; the physical address of the employer's main office or principal

place of business, and a mailing address, if different; the telephone number of the employer; plus such other information as the Commissioner deems material and necessary. Each time the employer provides such notice to an employee, the employer shall obtain from the employee a signed and dated written acknowledgment in English and in the primary language of the employee, of receipt of this notice, which the employer shall preserve and maintain for six years."

161.    Defendants failed to provide Plaintiff with a wage notice compliant with NYLL § 195(1)(a) either at the time of his initial hire or at any time thereafter.

162.    Due to Defendants' violations of NYLL § 195(1), Plaintiff is entitled to statutory penalties of $50.00 for each workday that Defendants failed to provide wage notices, up to a maximum of $5,000 per employee, reasonable attorney's fees, costs and injunctive and declaratory relief, as provided by NYLL § 198(1-b).

163.    Defendants violated NYLL § 195(3) by failing to furnish Plaintiff, with each payment of wages, an accurate statement listing the dates of work covered by that payment or wages; name of employee; name of employer; address and phone number of employer; rate or rates of pay and basis thereof, whether paid by the hour, shift, day, week, salary, piece, commission, or other; the regular hourly rate or rates of pay; the overtime rate or rates of pay; the number of regular hours worked, and the number of overtime hours worked; gross wages, deductions, allowances, if any, claimed as part of the minimum wages; and net wages.

164.    Through their failure to provide Plaintiff with wage statements as required by the NYLL, Defendants have violated NYLL §§ 190, *et seq.*, and the supporting New York State Department of Labor Regulations.

165.    Due to Defendants' violations of NYLL § 195(3), Plaintiff is entitled to statutory penalties of $250.00 for each workweek that Defendants failed to provide them with accurate wage statements, up to a maximum of $5,000 per employee, reasonable attorney's fees, costs and injunctive and declaratory relief, as provided for by NYLL § 198(1-d).

### **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff respectfully requests that this Court grant the following relief:

A.    Declaring that the practices complained of herein are unlawful under applicable state and federal law and enjoining Defendants from further performance thereof;

B.    Declaring that Defendants are joint employers of Plaintiff under the FLSA and NYLL;

C.    Declaring that Defendants violated the minimum wage provisions of the FLSA, NYLL and the supporting New York State Department of Labor Regulations;

D.    Declaring that Defendants violated the overtime provisions of the FLSA, NYLL and the supporting New York State Department of Labor Regulations;

E.    Declaring that Defendants violated the spread-of-hours pay provisions of the NYLL and New York State Department of Labor Regulations;

F.    Declaring that Defendants violated the notice provisions of the NYLL and Wage Theft Prevention Act;

G.    Declaring that Defendants violated the record keeping provisions of the FLSA, NYLL and New York State Department of Labor Regulations;

H.    Declaring that Defendants' violations of the FLSA and NYLL were willful;

I.    Awarding Plaintiff unpaid minimum wages;

J.    Awarding Plaintiff unpaid overtime wages;

22

K.      Awarding Plaintiff unpaid spread-of-hours compensation;

L.      Awarding Plaintiff liquidated and/or punitive damages in amount equal to the total amount of wages found to be due, pursuant to the FLSA and NYLL;

M.      Awarding Plaintiff statutory penalties for Defendants' failure to furnish wage notices and/or complete and accurate wage statements pursuant to the NYLL;

N.      Awarding Plaintiff reasonable attorney's fees, costs, and expenses incurred, pursuant to the FLSA and NYLL;

O.      Awarding Plaintiff pre-judgment and post-judgment interest, pursuant to the FLSA and NYLL;

P.      Awarding Plaintiff such other and further relief as the Court may deem equitable, just, and proper to remedy the Defendants' unlawful employment practices.

## **JURY DEMAND**

Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, Plaintiff demands a trial by jury.

Dated: July 13, 2026.
        Woodside, New York.

LAW OFFICE OF FELIX VINLUAN

By:     */s/ Felix Q. Vinluan*
        FELIX Q. VINLUAN (FV6788)
        6910 Roosevelt Avenue, 2nd Floor
        Woodside, NY 11377
        Tel. No. 718-478-4488
        Email: fqvinluan@yahoo.com
        *Attorneys for the Plaintiff*

23

## VERIFICATION

STATE OF NEW YORK )
) S.S.
COUNTY OF QUEENS )

I, MICHAEL KING F. VENERACION, am the Plaintiff in the within action. I have read the foregoing Complaint and know the contents thereof. The contents thereof are true to my own knowledge, except as to matters therein stated to be alleged upon information and belief, and as to those matters, I believe them to be true.

_____

**MICHAEL KING F. VENERACION**

SUBSCRIBED AND SWORN to before me this *13th* day of July 2026 in Queens County, State of New York.

Notary Public

FELIX Q. VINLUAN
Notary Public, State of New York
No. 02VI6129101
Qualified in Nassau County
Commission Expires June 20, 2029

24